IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRIAN LANCASTER,

    Plaintiff,

  v.

CITY OF PLEASANTON; OFFICER TIM MARTENS; COUNTY OF ALAMEDA; DEPUTY SHERIFF RYAN SILCOCKS; LESLEY REGINA; LISA SECORD; LOUIS SECORD (aka TREY); and DOES 1 through 10, inclusive,

    Defendants.

No. C 12-05267 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

## INTRODUCTION

In this civil-rights action arising from an alleged scheme to discredit plaintiff in child-custody proceedings, plaintiff brings claims for relief against seven named defendants and ten unnamed Does. Four of the named defendants move to dismiss on various grounds. Following full consideration of the parties' briefs and a hearing, defendants' motions are **GRANTED IN PART** and **DENIED IN PART**, and certain claims are **STAYED**.

## STATEMENT

Plaintiff Brian Lancaster was embroiled for several years in a bitter custody dispute with his ex-wife, defendant Lisa Secord. Her friend, defendant Attorney Lesley Regina, was romantically involved with defendant Deputy Ryan Silcocks of the Alameda County Sheriff's

1  Department. Attorney Regina convinced Deputy Silcocks to retrieve information regarding
2  plaintiff from confidential databases. On three specific occasions in January and February 2012,
3  Deputy Silcocks found information that cast plaintiff in a negative light. He gave this
4  information to Attorney Regina, who then sent it to ex-wife Lisa Secord for use against plaintiff
5  in family court.

6  Plaintiff and other citizens filed complaints with the county regarding the deputy's
7  actions, but the county failed to thoroughly evaluate the conduct or to discipline the deputy.
8  The district attorney of (presumably) Alameda County has since charged Deputy Silcocks and
9  Attorney Regina with various misdemeanor counts relating to unauthorized access to records.

10  In the meantime, Officer Tim Martens of the Pleasanton police department had been in
11  communication with his friend, plaintiff's ex-wife's new husband, defendant Louis Secord.
12  The two spoke about the Secords' efforts to have plaintiff falsely arrested to gain an advantage
13  in the custody dispute. Louis Secord provided Officer Martens with some of the information
14  gained from Deputy Silcocks' illegal record searches. He and his wife Lisa, along with
15  Attorney Regina and Deputy Silcocks, asked Officer Martens to arrest plaintiff.

16  In January 2012, Officer Martens pulled plaintiff's car over and arrested plaintiff after
17  finding methamphetamine that Officer Martens allegedly "planted" in the car. Plaintiff was
18  charged and jailed as a result (the district attorney later dropped the charges). Subsequently, one
19  or both of the Secords requested that Officer Martens amend the arrest report to state that he also
20  found ammunition in plaintiff's car in order to provide the Department of Justice with probable
21  cause to search plaintiff's home. Plaintiff's home was indeed searched, and he was again
22  arrested. Ex-wife Lisa or Attorney Regina planned to use plaintiff's falsified arrest report, as
23  provided to them by Officer Martens, against plaintiff in the custody dispute. Plaintiff and other
24  citizens complained to the City of Pleasanton regarding Officer Martens' actions, but the city
25  failed to properly investigate or discipline him.

26  In addition to these claims, plaintiff alleges that Deputy Silcocks, Attorney Regina,
27  and ex-wife Lisa Secord attempted to harass him in various other ways. The tale continues
28  with claims that one or more of the named defendants induced plaintiff's girlfriend to file

1  unsubstantiated restraining orders against him, placed a secret GPS tracker on plaintiff's car,
2  and defamed him on the internet as a child-abuser. Whether the above statements are true or
3  not remains to be seen, but they are the allegations in suit.
4      Plaintiff claims his civil rights were infringed in violation of 42 U.S.C. 1983 by the
5  two law enforcement officers and the localities employing them. Plaintiff pleads nine state-law
6  claims against various subsets of defendants. Plaintiff prays for $3 million in damages.
7  Neither Deputy Silcocks nor the Secords, although properly served, have responded to this suit.
8  Default has been entered as to Deputy Silcocks (Dkt. No. 52). The County of Alameda, the
9  City of Pleasanton, Officer Martens, and Attorney Regina have all moved to dismiss various of
10 plaintiff's claims under Rule 12(b)(6). Except for the Secords, who reside in Washington, all
11 defendants are residents of or are localities within California.

## ANALYSIS

As explained below, the Section 1983 claim against Officer Martens survives the motion to dismiss. As a result, there is original jurisdiction under 28 U.S.C. 1331. Plaintiff brought Section 1983 claims only against the law enforcement officers and their employers. The remaining claims arise under state law, and the remaining parties (defendants Louis and Lisa Secord and Attorney Regina) are not directly implicated in the Section 1983 claim. Under 28 U.S.C. 1367, supplemental jurisdiction regarding these claims and parties may be exercised so long as the various claims arise under a "common nucleus of operative facts." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348–51 (1988). Plaintiff's tale spins a convoluted web of intrigue, but at its center are the machinations of the Secords, who allegedly manipulated their friends to break the law in various ways in order to help the Secords retain custody of plaintiff's children. This multiparty drama leaves unclear how the facts of the single remaining federal claim may overlap with the sprawling state-law allegations. At this early stage in litigation, this order finds that it is likely not in the interests of judicial efficiency for this Court to retain jurisdiction over all parties and all claims. Judgment will be reserved until the facts are further developed. Accordingly, the state-law claims against all defendants are **STAYED** pending further discovery regarding the federal claim against Officer Martens. Officer Martens'

motion to dismiss the Section 1983 claim is **DENIED.** The City of Pleasanton's motion to dismiss the Section 1983 claim is **GRANTED WITHOUT LEAVE TO AMEND**. The County of Alameda's motion to dismiss the Section 1983 claim is **GRANTED WITHOUT LEAVE TO AMEND**.

### 1. LEGAL STANDARD FOR RULE 12(b)(6).

On a motion to dismiss, a court evaluates a complaint for:

> sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

### 2. CITY OF PLEASANTON AND OFFICER MARTENS.

Plaintiff pleads six claims against Officer Martens, including a claim under Section 1983 and five state-law claims. Officer Martens moves to dismiss all six claims. Plaintiff pleads five claims against the City of Pleasanton. These include a claim under Section 1983 and four state-law claims. The city moves to dismiss all five claims.

#### A. Officer Martens.

Plaintiff's allegations state a claim that Officer Martens violated Section 1983. To state such a claim, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that Officer Martens stopped his car on January 16, 2012, searched plaintiff and plaintiff's car, "planted" methamphetamine in the car, and then arrested plaintiff without probable cause. Plaintiff also alleges that various other defendants later asked Officer Martens to supplement the arrest report to indicate Martens found ammunition in plaintiff's car during the search. This was alleged to be for the purpose of obtaining a search warrant for plaintiff's home, although the complaint is unclear whether Martens ever complied (Compl. ¶¶ 38–40). These allegations, if proven, would constitute a violation of plaintiff's Fourth Amendment rights. If acting in his official capacity, as alleged, then Officer Martens'

1  actions were taken under color of state law. Officer Martens' motion to dismiss the
2  Section 1983 claim against him is therefore **DENIED**.

### B. City of Pleasanton.

Localities cannot be liable under Section 1983 pursuant to a theory of *respondeat superior*. *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to state a claim against a locality, then, plaintiffs must plead facts indicating that the locality directly violated Section 1983. *Monell* liability may arise when a locality has an "official custom or policy" that requires its officers to engage in illegal behavior such as the illegal arrest alleged here. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Plaintiff states that he filed a complaint about Officer Martens with the city, and the city failed to respond. One event does not make a policy, however. Plaintiff's conclusory allegations that such a policy exists provide no facts upon which such a claim could hang (Compl. ¶ 87).

Alternatively, localities may be liable under a "failure to train" scenario evincing "deliberate indifference" to the failure's unconstitutional results. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360. Plaintiff asserts that prior to the events in question here, "other citizen complaints were made" regarding Martens, "similar to those types of allegations made here, involving dishonesty and abuse of power and authority" (Compl. ¶ 52). Plaintiff appears to allege the city deliberately ignored a pattern of unconstitutional conduct by Officer Martens, or was "sufficiently inadequate" in its supervision to rise to the level of "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Plaintiffs' allegations regarding these possible theories are hopelessly conclusory, and will not support his claims (*see* Compl. ¶¶ 49, 52, 89–90).

At the hearing, plaintiff indicated that he is not in possession of any further facts that could support a Section 1983 claim against the city. Given this lack of potentially usable facts, this order finds that it would be futile to allow plaintiff to amend his complaint as to this issue. The city's motion to dismiss the Section 1983 claim against it is **GRANTED WITHOUT LEAVE TO AMEND**.

5

### 3. COUNTY OF ALAMEDA

Plaintiff pleads a Section 1983 claim against the county, as well as four state-law claims. The county moves to dismiss the Section 1983 claim and two of the state-law claims.

To state a claim under Section 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that the county's employee, Deputy Silcocks, committed acts that violated plaintiff's civil rights. These alleged actions consisted of releasing confidential information about plaintiff to third parties. As noted above, localities cannot be liable under Section 1983 pursuant to a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Therefore, to the extent plaintiff is arguing that the county should be liable for its deputy's actions, such a claim is invalid.

If plaintiff is attempting to allege *direct* county liability under an exception to *Monell*, he has failed to state such a claim because he did not allege the county's action led him or other citizens to be deprived of a right recognized by the Section 1983 jurisprudence. Plaintiff's claim against the county arises out of the county's alleged failure to properly respond to his and other citizens' complaints about Deputy Silcocks' behavior. The other complaints about Deputy Silcocks were "similar to those types of allegations" made by plaintiff here (Compl. ¶ 51). According to plaintiff, these actions constituted "conduct intending to cause interference with [plaintiff's] family relationships," violating plaintiff's "civil rights under the United States Constitution and Federal statutes" (*id*. ¶ 88). But his allegations do not support an inference that Deputy Silcocks violated plaintiff's constitutional rights, or that the county is liable for failing to respond to complaints about this conduct. He provides no guidance on what provisions of the Constitution or federal statutes might have been violated by conduct "interfering with family relationships," and thus has failed to plead an essential element of a Section 1983 claim.

To the extent plaintiff may be attempting to allege Deputy Silcocks violated a constitutional "right to informational privacy," it must be noted that the Supreme Court has rejected the broad application of such a right. *NASA v. Nelson*, 131 S. Ct. 746, 751 (2011). Our court of appeals has limited informational privacy rights to those that bear on the release of

6

information concerning "marriage, procreation, contraception, family relationships, and child rearing and education." *Seaton v. Mayberg*, 610 F.3d 530, 538 (9th Cir. 2010). Plaintiff has not alleged that Deputy Silcocks released any such information. Alleging that the release of private information may *affect* plaintiff's "family relationships" is not the same as alleging that the released information is *about* "family relationships." As a matter of law, this type of allegation cannot support a claim of Section 1983 violation.

Plaintiff's attempt to allege direct county liability under Section 1983 is barred because the violations he alleges do not rise to the level of a Section 1983 claim. As there is no claim that any county employee violated any civil right recognized in the Section 1983 jurisprudence, no amendment could save plaintiff's claim against the county. Amendment would be futile. The county's motion to dismiss the Section 1983 claim is **GRANTED WITHOUT LEAVE TO AMEND**.

### 4. ATTORNEY LESLEY REGINA.

Plaintiff asserts seven state-law-only claims against Attorney Regina. She moves to dismiss, arguing that this Court does not have original jurisdiction under 28 U.S.C. 1332, and that the exercise of supplemental jurisdiction pursuant to 28 U.S.C. 1367 is unwarranted on plaintiff's facts.

Regina is correct that the parties in this case do not meet the requirements of complete diversity as required for Section 1332 jurisdiction: plaintiff resides in California, and all the defendants save the Secords are in California.

Attorney Regina argues that supplemental jurisdiction should not be exercised because the exclusively state-law claims against her meet the test for declining supplemental jurisdiction, which is proper when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

7

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. 1367(c).

Despite Regina's urging, one federal claim will survive. The Section 1983 claim against Officer Martens, involving an alleged illegal arrest and falsification of a police report, survives his motion to dismiss. Regina's argument that the multitude of state-law claims will "swamp" the Section 1983 claim against Officer Martens is well-taken, however. At this early stage, judicial efficiency counsels against adjudicating the state-law claims together with the one surviving federal claim. Factual development is still in its infancy, but it appears unlikely that supplemental jurisdiction over the claims against Attorney Regina will be proper. Nevertheless, Attorney Regina was allegedly implicated in the Section 1983 claim: according to plaintiff, Officer Martens performed the illegal arrest and falsified the resultant police report at Regina's behest. The claims against Regina must accordingly be **STAYED** pending further discovery.

## CONCLUSION

This action involves a domestic-relations dispute, one small part of which happens to involve a police officer. The portion of the complaint dealing with Officer Martens states a Section 1983 claim. The remaining Section 1983 claims have been dismissed. The rest of the action arises under state law, and the proper way to deal with this is to exercise jurisdiction over the federal claim against Officer Martens *only*. Officer Martens' motion to dismiss the Section 1983 claim is **DENIED**. Dismissal of the Section 1983 claim against the City of Pleasanton is **GRANTED WITHOUT LEAVE TO AMEND**. Dismissal of the Section 1983 claim against the County of Alameda is **GRANTED WITHOUT LEAVE TO AMEND**. All remaining claims are **STAYED** pending further development of the record.

At the hearing, plaintiff stated he now has facts sufficient to plead a conspiracy-based Section 1983 claim against Attorney Regina. Plaintiff may file a motion seeking leave to file an amended complaint by **MONDAY, APRIL 1, 2013** (*see* Dkt. No. 31). A proposed amended complaint and a redline of changes must be appended to the motion, which must be limited to a Section 1983 claim against Attorney Regina. Counsel are on notice of the arguments already of record, and must plead their best cases. No further amendments will be allowed.

8

The parties are to enter with alacrity into discovery as to all of Officer Martens' alleged activities. Once the case against Officer Martens runs its course, there is a distinct possibility that supplemental jurisdiction will *not* be exercised over the remaining sprawl.

**IT IS SO ORDERED.**

Dated: March 25, 2013.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE